GUARDIANSHIP OF JAMES A. SMITH.

No. 97-P-689.

Worcester. June 10, 1997. - September 11, 1997.

Present: WARNER, C.J., SMITH, & JACOBS, JJ.

*Probate Court,* Guardian, Removal of fiduciary, Standing. *Statute,* Construction. *Uniform Durable Power of Attorney Act.*

Discussion of the Uniform Durable Power of Attorney Act, G. L. c. 201B, §§ 1-7, inserted by St. 1981, c. 276, § 2. [497-498]

A Probate Court judge erred in appointing independent third parties, in lieu of persons nominated by the ward in a valid durable power of attorney, to be the guardians of the incompetent ward, where the language of G. L. c. 201B is clear and mandatory [498-500], and where there was insufficient evidence to warrant disqualification of the nominated guardians nor was other good cause shown for their not serving [500-501].

Persons nominated as guardians in a durable power of attorney had standing to object to the appointment of others as guardians of the ward and were entitled to notice of any hearing on the appointment of the others as well as an opportunity to be heard. [502-503]

PETITION filed in the Worcester Division of the Probate and Family Court Department on October 4, 1996.

The case was heard by *Joseph Lian, Jr.,* J.

*George L. Dresser (Roy A. Bourgeois* with him) for David J. Adams & another.

*Frank S. Puccio, Jr.,* for Judith Smith & others.

*Mary L. Bonauto & Gary D. Buseck,* for Gay & Lesbian Advocates & Defenders & others, amici curiae, submitted a brief.

WARNER, C.J. This appeal presents an issue of first impression regarding the propriety of guardianship proceedings conducted in the Probate and Family Court. The subject of the proceedings, James A. Smith, is an eighty-three year old man who suffers from severe, advanced Parkinson's Disease with dementia. He is the majority ·stockholder of C.K. Smith and Company,

Inc. (C.K. Smith). On or about August 15, 1989, Smith executed a durable power of attorney[1] in which he appointed David J. Adams and Alfred H. Carl, his long-time friends and business associates,[2] as his attorneys in fact, and nominated them as his guardians in the event of future incapacity. Smith ratified the power of attorney, in writing, in October, 1994.

In October, 1996, Marjorie and Judith Smith (petitioners), Smith's wife and daughter, filed a petition for guardianship in the Probate Court in which they alleged that Smith was no longer able to "make or communicate informed decisions due to physical incapacity or illness."[3] The petition requested that Judith Smith and James F. Linnehan, an accountant and family friend, be appointed as Smith's guardians. On October 24, 1996, a temporary decree of guardianship naming Judith Smith and Linnehan was entered without prior notice or objection.

After the temporary guardianship was in place, a citation issued by the Probate Court was published, providing that any objections to the permanent appointment of Judith Smith and Linnehan must be filed by December 17, 1996. Acting pro se, Adams and Carl filed a timely objection. The petitioners subsequently filed a motion to strike the objection. The motion was scheduled for hearing on January 21, 1997.[4] Prior to the hearing, Adams and Carl retained counsel, who filed a memorandum in opposition to the motion to strike, attaching thereto copies of the 1989 durable power of attorney and the 1994 ratification. Adams and Carl also filed their own petition

---

[1] General Laws c. 201B, § 1(a), as inserted by St. 1981, c. 276, § 2, provides: "A durable power of attorney is a power of attorney by which a principal, in writing, designates another as his attorney in fact and the writing contains the words, 'This power of attorney shall not be affected by subsequent disability or incapacity of the principal,' or 'This power of attorney shall become effective upon the disability or incapacity of the principal,' or similar words showing the intent of the principal that the authority conferred shall continue notwithstanding the subsequent disability or incapacity of the principal."

The document executed by Smith provides, "This power of attorney and the powers herein granted . . . shall continue until revoked by me in writing and shall not be affected by my subsequent disability or incapacity."

[2] Adams was president and a director of C.K. Smith, and Carl was clerk and a director of the company.

[3] Smith's incapacity is not at issue on appeal.

[4] Adams and Carl received notice of the hearing on the motion to strike their objection, but were unaware that the permanent appointment of Judith Smith and Linnehan was scheduled for hearing on the same date.

for guardianship, along with an ex parte motion seeking their appointment as Smith's temporary guardians.[5]

The scheduled hearing was held on January 21, 1997. It consisted primarily of unsubstantiated allegations by counsel for the petitioners concerning improprieties committed by Adams over the course of his relationship with Smith, a pending lawsuit filed by Adams in Middlesex Superior Court,[6] and a purported history of distrust and suspicion within the Smith family toward Adams. In addition, Marjorie Smith testified that she wanted her daughter and James Linnehan to be her husband's guardians, and Judith Smith testified that her mother never hired a divorce lawyer or planned to divorce her father. Carl did not attend the hearing and, although Adams was present and sworn, he was not given the opportunity to testify.[7]

In the midst of the discussion and without warning, the judge ended the hearing and informed the parties that they would have the opportunity to present their arguments fully in the pending Superior Court action. He subsequently allowed the petitioners' motion to strike Adams's and Carl's objection and appointed Judith Smith and Linnehan as Smith's permanent guardians. Although the judge was aware that Adams and Carl had filed a competing guardianship petition pursuant to their nomination in Smith's power of attorney, no action was taken on the petition. Approximately two months later, the judge issued findings of fact and conclusions of law in support of his decision. He ruled that because Adams and Carl were both officers and directors of C.K. Smith, "[g]ranting them a guardianship over [James Smith], who is the controlling interest holder of [the company], would create a conflict of interest and give [both men] an undue advantage" sufficient to disqualify them from serving as Smith's guardians.

Adams and Carl appeal the judge's decision on several

---

[5]It is unclear whether the petitioners were aware of the existence of the power of attorney prior to December 17.

[6]The complaint filed against Judith Smith and Linnehan sought Judith's removal as James Smith's temporary guardian, and alleged that she abused her position for her own benefit and to the detriment of her father and C.K. Smith. No claim of wrongdoing was brought against Linnehan, and the sole basis for his involvement in the case appears to have been his status as a necessary party under Mass.R.Civ.P. 19(a)(2), 365 Mass. 765 (1974).

[7]Adams's attorney requested to have his client testify, but the judge declined to hear the testimony. The record is unclear as to the exact subject of the proposed testimony.

grounds. First, they argue that there was no evidence presented at the hearing to show that they were unsuitable to serve as Smith's guardians, and that in the absence of such evidence, the probate judge was required to appoint them pursuant to their nomination. They further maintain that, at the very least, they were entitled to notice that the issue of permanent guardianship would be decided at the January 21 hearing and the opportunity to present evidence in their own behalf before being disqualified by the court.[8] The petitioners argue that because Adams and Carl lacked standing to challenge the appointment of Judith Smith and Linnehan as James Smith's permanent guardians, they were not entitled to notice or an opportunity to present evidence at the hearing. Accordingly, they contend that the judge properly struck Adams's and Carl's objection. They further contend that the evidence adduced at the hearing was sufficient to disqualify both men from serving as Smith's guardians and that the judge's appointment of Judith Smith and Linnehan was therefore proper.

We vacate the decision of the Probate Court and remand the case for further proceedings consistent with this opinion.

*Appointment of a Permanent Guardian Pursuant to G. L. c. 201B.*

This appeal presents an issue of first impression in this Commonwealth: whether, when a principal has nominated his future guardian by durable power of attorney and protective fiduciary proceedings are thereafter commenced, the Massachusetts Uniform Durable Power of Attorney Act, G. L. c. 201B, mandates that the Probate Court make its appointment in accordance with the nomination in the absence of good cause or disqualification. We hold that G. L. c. 201B (Massachusetts Uniform Act) so requires.

James Smith executed a durable power of attorney in 1989, in which he appointed Adams and Carl his attorneys in fact and nominated them as his guardians in the event of future incapacity. He ratified the appointment in 1994.[9] Adams and Carl argue that the judge was therefore obligated to appoint them as guardians in accordance with Smith's clearly expressed wishes, un-

---

[8]The petitioners concede that Adams and Carl were not given notice that the appointment of Smith's permanent guardian would be determined at the January 21 hearing.

[9]The petitioners refuse to "admit the validity of the durable power of attorney or the subsequent confirmation." However, they offer no reasoned basis

less presented with evidence sufficient to establish that they were unsuitable to serve. They further contend that no such evidence was presented.

Massachusetts adopted the Uniform Durable Power of Attorney Act (Uniform Act), with minor variations, in 1981. G. L. c. 201B, §§ 1-7, inserted by St. 1981, c. 276, § 2.[10] Section 3(*b*) of the Massachusetts Uniform Act expressly authorizes a principal to "nominate, by a durable power of attorney, the conservator, guardian of his estate, or guardian of his person for consideration by the court . . . [in the event] protective proceedings . . . are thereafter commenced." It further dictates that, in the absence of good cause or disqualification, "[t]he court *shall* make its appointment in accordance with the most recent . . . nomination by the principal" (emphasis added). As initially conceived, the "dominant idea was that durable powers would be used as *alternatives* to court-oriented, protective procedures" such as guardianships. Uniform Durable Power of Attorney Act, Prefatory Note, 8A U.L.A. 310 (1993) (emphasis in original). The durable power concept later evolved into a device "that [could] be used either as an alternative to a protective procedure, or as a designed supplement enabling nomination of the principal's choice for guardian to an appointing court and continuing to authorize efficient estate management under the direction of a court appointee." *Id.* at 311. The Uniform Act recognizes an individual's right to self-determination by "permitting a principal to use a durable power of attorney to express his preference regarding any future court appointee charged with the care and protection of his person or estate . . . [by] secur[ing] the authority of the attorney in fact against upset by arranging matters so that the likely appointee in any future protective proceedings will be the attorney in fact or another equally congenial to the principal and his plans." *Id.*, § 3, Comment, at 322. The language of the statute is clear and unequivocal. See *Casey* v. *Massachusetts Elec. Co.*, 392 Mass. 876, 880 (1984) (statutory language is the primary source of insight into legislative purpose). "The word 'shall' in a statute

for their challenge. Accordingly, we assume for purposes of this appeal that both documents were validly executed.

[10]To date, twenty-seven other States, the District of Columbia and the U.S. Virgin Islands have adopted durable power of attorney statutes based on the Uniform Act. See Uniform Durable Power of Attorney Act, 8A U.L.A. 48 (Supp. 1997).

is commonly a word of obligation and is [therefore] inconsistent with the idea of discretion." *Johnson* v. *District Attorney for the Northern Dist.*, 342 Mass. 212, 215 (1961). See *Hashimi* v. *Kalil*, 388 Mass. 607, 609 (1983) ("The word 'shall' is ordinarily interpreted as having a mandatory or imperative obligation"). Thus, it would appear that a court, presented with a valid power of attorney in which a principal has nominated his future guardian, would be compelled to appoint that nominee unless presented with competent evidence sufficient to disqualify him from serving. See *In re Sylvester*, 409 Pa. Super. 439, 453-454 (1991). See also Dunphy, Probate Law and Practice § 43.2, at 175 (2d ed. 1997) ("[T]he court is required by [G. L. c. 201B, § 3*b*] to make its appointment in accordance with the most recent such nomination by the principal except for good cause or disqualification"). And see *id.* § 45.5, at 216 ("If the proposed ward has nominated someone, that person would be appointed unless it could be demonstrated that he or she was unsuitable").

The petitioners maintain that this is not the case, however, because G. L. c. 201B must be read in conjunction with G. L. c. 201, which governs the appointment of temporary and permanent guardians and affords the Probate Court broad discretion in deciding such matters. *New England Merchants Natl. Bank* v. *Spillane*, 14 Mass. App. Ct. 685, 693 (1982). They argue that under c. 201, it is the best interests of the ward, rather than his previously expressed wishes, that should govern the appointment of a permanent guardian and that, accordingly, a court must always evaluate the suitability of a potential guardian, even one nominated pursuant to c. 201B. See *New England Merchants Natl. Bank* v. *Spillane, supra* at 693 (best interests of the ward must be considered by court appointing guardian pursuant to c. 201).

Legislative provisions "addressing similar subject matter are to be construed together to make 'an harmonious whole consistent with the legislative purpose,' and to avoid rendering any part of the legislation meaningless." *Healey* v. *Commissioner of Pub. Welfare*, 414 Mass. 18, 25-26 (1992) (citation omitted), quoting from *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981). *Dowell* v. *Commissioner of Transitional Assistance*, 424 Mass. 610, 613 (1997). Moreover, a court's "equitable powers 'to act in the best interests of a person under

its jurisdiction'. . . . [do] not permit [it] to disregard statutory requirements." *Freeman* v. *Chaplic*, 388 Mass. 398, 406 n.15 (1983). Thus, while G. L. c. 201B and G. L. c. 201 must be considered together, the broad discretion afforded the Probate Court in deciding guardianship matters cannot be construed as abrogating the express authority of a principal under c. 201B to designate his future guardian in the absence of good cause or disqualification. Indeed, we think the two principles are entirely consistent. An individual's stated preference has traditionally been considered a "critical factor" by courts in determining matters of guardianship. *Guardianship of Roe*, 383 Mass. 415, 445 (1981). See *Allis* v. *Morton*, 4 Gray 63, 64 (1855) ("it would be the duty as well as the pleasure of the court anxiously to consult" the ward as to his preference of guardian); *New England Merchants Natl. Bank* v. *Spillane*, 14 Mass. App. Ct. at 694 ("judge should try to ascertain . . . what the ward's desires would be" before appointing guardian).

We hold that when a principal has nominated his guardian by power of attorney pursuant to G. L. c. 201B, and protective proceedings are thereafter commenced, the Probate Court must, on proper petition, appoint the individual(s) nominated in the power, except for good cause or disqualification. G. L. c. 201B, § 3(*b*). We also conclude that G. L. c. 201B, § 3(*b*), places the burden of proof on anyone wishing to challenge the nominee's appointment to produce competent evidence sufficient to establish such good cause or disqualification. Our decision is not only consistent with the express language of the statute, but should also discourage courts, often uninformed about an individual's personal preferences and concerns in such proceedings, from appointing a guardian contrary to the individual's clearly expressed wishes. See Uniform Durable Power of Attorney Act, *supra* § 3, Comment.

The Superior Court of Pennsylvania reached a similar result when asked to interpret that State's version of the Uniform Act.[11] See *In re Sylvester*, 409 Pa. Super. 439. See also G. L. c. 201B, § 6 ("This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it"). In *Sylvester*, the court applied the language of the statute literally, holding that the individuals nominated in a principal's dur-

---

[11]The operative language of the provision construed in *In re Sylvester*, *supra*, is identical to G. L. c. 201B, § 3(*b*).

able power of attorney "were [entitled not only] to be appointed guardians in accordance with the dictates of [Pennsylvania's version of the Uniform Act, but also to] sufficient notice of the hearing, and . . . the opportunity to present : . . . evidence" on their own behalf. *In re Sylvester*, 409 Pa. Super. at 454. In reaching its decision, the court explained that "[i]n the absence of proof of good cause or disqualification based on competent evidence at the guardianship hearing," the court's appointment of an independent third party as permanent guardian was error. *Ibid.* .

*Evidence to Support Disqualification.*

We next consider whether there was sufficient evidence presented at the January 21, 1997, hearing to support the judge's conclusion that Adams and Carl were disqualified from serving as Smith's guardians due to a conflict of interest. The petitioners argue that the evidence adduced at the hearing was sufficient to support disqualification. The "evidence" on which they rely consists primarily of statements made by counsel at the hearing and not substantiated through the testimony of witnesses or otherwise.[12]

The parties strongly disagree on whether these statements constitute competent evidence upon which the probate judge properly relied in reaching his decision. See *Harper* v. *Harper*, 329 Mass. 85, 88 (1952) (uncontradicted statements of counsel may be taken as evidence). We need not reach the issue, however, because the judge apparently did not consider any of counsel's representations in reaching his decision.[13] Instead, in his conclusions of law, the judge relied solely on Adams's and

---

[12]The allegations included charges that Adams was particularly unsuitable to serve as Smith's guardian, due to alleged illegal and immoral activities regarding the operations of C.K. Smith and various personal and business ventures in which Adams and Smith were involved. The petitioners also maintained that Adams's status as the option holder of Smith's stock would prevent him from faithfully discharging his duties as Smith's guardian. Compare *Cogswell* v. *Hall*, 183 Mass. 575 (1903) (one trying to enforce a claim against an estate is improper person to act as executor).

[13]Indeed, allegations made against Judith Smith during the hearing, if substantiated, could have been sufficient to disqualify her from serving as her father's guardian. Specifically, counsel for Adams and Carl alleged that Judith Smith used her position as temporary guardian to remove Adams from his position as director of C.K. Smith and subsequently appointed herself as treasurer in an attempt to advance her own interests while frustrating her father's business plan and creating disruption and chaos within the company. See *Colbert* v. *Hennessey*, 351 Mass. 131, 145 (1966) (distinguishing situation

Carl's positions as officers and directors of C.K. Smith in support of his conclusion that the two men had a conflict of interest sufficient to disqualify them from serving as Smith's guardians. We consider, therefore, only whether Adams's and Carl's dual roles as guardians and as officers and directors of C.K. Smith would have created an inherent conflict of interest.

Before a court removes or rejects a fiduciary due to a conflict of interest, there must be evidence of some actual conflict. See, e.g., *District Attorney for the Norfolk Dist.* v. *Magraw*, 417 Mass. 169, 174 (1994) (Probate Court has duty to remove executor where evidence establishes obvious unsuitability); *Lindsey* v. *Ogden*, 10 Mass. App. Ct. 142 (1980). There is no such evidence in this case. When competent, Smith placed great trust and confidence in Adams and Carl, as evidenced by his nomination of them as his guardians. He was also aware of their involvement in the operations of C.K. Smith. There was no inherent conflict of interest in these circumstances. Cf. *Colbert* v. *Hennessey*, 351 Mass. 131, 145 (1966) (executor's position as director and president of company in which the estate owned a large percentage of stock was insufficient to create a conflict of interest); *Lindsey* v. *Ogden*, 10 Mass. App. Ct. at 149 (executor's dual roles as executor and trustee of testamentary trust, alone, did not create a conflict). Indeed, we think it perfectly reasonable for Smith to have entrusted his sizeable interest in the company to individuals whom he knew and trusted and who were familiar with the company's operations. See *Colbert* v. *Hennessey*, *supra* at 145. These, in fact, may well have been among the reasons which prompted him to nominate Adams and Carl. *Ibid.* Moreover, Adams's and Carl's objectives in both roles should reasonably be the profitable and efficient continuation of C.K. Smith's operations. Their duties to Smith and the corporation would therefore be correlative rather than incompatible. *Ibid.*

We cannot say that the mere possibility that future conflicts might arise as a result of Adams's and Carl's dual roles is sufficient to disqualify them from serving as Smith's guardians. Accordingly, we conclude that the probate judge should not have ignored the dictates of G. L. c. 201B, § 3(*b*), by appointing Judith Smith and James Linnehan as Smith's permanent guardians in the absence of good cause or disqualification.

where testator knows he is appointing interested person as fiduciary from that in which fiduciary uses position to gain control of the estate's assets).

*Standing to Object and Notice of the Hearing.*

Because we have determined that Adams and Carl were to be appointed guardians pursuant to the mandate of G. L. c. 201B, § 3(b), we also hold that they had standing to object to the appointment of Judith Smith and Linnehan as Smith's permanent guardians, and that they were entitled to notice of any hearing to determine permanent guardianship and an opportunity to present evidence at the hearing. *In re Sylvester*, 409 Pa. Super. at 454.

Although G. L. c. 201 does not expressly include Adams and Carl among the class of individuals entitled to notice in matters of guardianship,[14] "[i]t is, of course, within the power of a [P]robate [Court] to order notice to such additional persons who have a substantial interest in the proceedings." *Freeman* v. *Chaplic*, 14 Mass. App. Ct. 493, 495 n.3 (1982), *S.C.*, 388 Mass. 398 (1983). As the individuals in whom Smith entrusted his physical and financial affairs by nominating them as his future guardians, Adams and Carl had a substantial interest in the proceedings. We think they were entitled to notice of the hearing to determine Smith's permanent guardian and an opportunity to offer evidence in support of their appointment, before summarily being disqualified by the court. *In re Sylvester*, 409 Pa. Super. at 453-454. In the absence of such notice, the appointment of Judith Smith and Linnehan is invalid. See *Guardianship of Doe*, 391 Mass. 614, 619-620 (1984) (order appointing permanent guardian invalid where the only notice provided was of hearing with respect to appointment of temporary guardian).

We also conclude that Adams's and Carl's nomination afforded them standing to object to the permanent appointment of Judith Smith and Linnehan. They would undoubtedly be entitled to petition for the removal of Smith's guardians pursuant to

[14]General Laws c. 201, § 7, as amended by St. 1974, c. 845, § 5, provides, in relevant part:

"No appointment shall be made without . . . notice [of the time and place appointed for the hearing] to the heirs apparent or presumptive of the alleged mentally ill or mentally retarded person, including the husband or wife, if any, as the court may order."

G. L. c. 201, § 13A.[15] Accordingly, if denied standing in the present proceeding, Adams and Carl would be forced to petition for the removal of Judith Smith and Linnehan and, if successful, to file their own petition for appointment pursuant to G. L. c. 201B, § 3(*b*). Such a result would exalt form over substance, improperly place the burden on Adams and Carl to show that Judith Smith and Linnehan were unsuitable to serve as Smith's guardians, and needlessly delay the implementation of Smith's clearly expressed wishes.[16]

We reverse the decree appointing Judith Smith and James F. Linnehan as the permanent guardians of James A. Smith, vacate the order granting the petitioners' motion to strike the objections of Adams and Carl, and remand the case for an evidentiary hearing on the appointment of Adams and Carl as James Smith's permanent guardians. At the hearing, the burden will be on any person objecting to the appointment to present competent evidence to establish good cause or disqualification.

*So ordered.*

---

[15]General Laws c. 201, § 13A, incorporating by reference § 6(*a*), as appearing in St. 1985, c. 525, § 1, provides that "two or more relatives or friends" of the ward may petition for a guardian's removal.

[16]After their appointment, Smith's temporary guardians revoked the durable power of attorney with respect to Adams only. We conclude that the revocation did not deprive Adams of standing.