JOHN J. MURRAY *vs.* MASSACHUSETTS BONDING AND INSURANCE COMPANY.

Hampden.  September 22, 1932. — May 22, 1933.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Probate Court,* Appeal, Rule 10. *Rules of Court. Executor and Administrator,* Accounts. *Words,* "Aggrieved."

The surety upon the bond of an executor who has been removed by a probate court is a person "aggrieved" by a decree charging the executor upon his account, and, under G. L. (Ter. Ed.) c. 215, § 9, has a right to appeal therefrom.

A decree of a probate court allowing an account of an executor, which was described as "third account revising the first and second accounts," and which was found by the court to have been stated with "the assistance of a public accountant and unusual coöperation of counsel," was improper where it appeared from the judge's findings that such revised account in Schedule A contained two items, one entitled "Amount of personal property according to inventory," and the other entitled "Gain over inventory upon revised account by assets not heretofore listed," and that the sums set opposite such items both were false.

PETITION, filed in the Probate Court for the county of Hampden on April 12, 1932, for the allowance of a third account of John J. Murray as executor of the will of Jane F. King, late of Springfield.

Proceedings in the Probate Court before *Denison*, J., are described in the opinion. The surety upon the executor's bond appealed from a decree allowing the account.

*R. H. Holt*, (*A. R. Simpson* with him,) for Massachusetts Bonding and Insurance Company.

*E. H. Lyman, Jr.*, (*R. T. King* with him,) for Raymond T. King, administrator *de bonis non* with the will annexed, and others.

RUGG, C.J. This is an appeal by the surety upon the bond of a removed executor from a decree allowing the third account revising the first and second accounts of the executor.

The contention is made that the surety upon the bond of the executor was not entitled to appeal from the decree allowing the account. It is provided by G. L. (Ter. Ed.) c. 215, § 9, that a "person aggrieved by . . . decree . . . of a probate court . . . may . . . appeal from the same. . . ." It has been held that a person is "aggrieved" within the meaning of that word in this section provided it appears that "he has some pecuniary interest, some personal right, or some public or official duty resting upon him, affected by the decree." *Monroe* v. *Cooper*, 235 Mass. 33, 34. *Madden* v. *Madden*, 279 Mass. 417. The surety upon the bond of an executor who has been removed from his trust falls within this description. It was said, with citation of authorities, in *Bassett* v. *Fidelity & Deposit Co. of Maryland*, 184 Mass. 210, 213, 214, "a decree of a Probate Court allowing an account of an executor or other official is binding on all interested in the estate including sureties on the bond of the accountant. If there is error, the error must be corrected in the Probate Court, as it may be if there was fraud or if the party in question had not such notice as to be concluded by the decree." It is apparent that the surety in the case at bar would be bound by final decree on the account because proper citation issued and return was made of service, appearance was entered for the surety and counsel for it was present at the time set for hearing. It follows as a corollary that a surety in these circumstances

is a party interested in the accounts of the principal, and has a right of appeal from a decree settling those accounts, because such decree establishes the amount of liability of the surety on the bond. *Farrar* v. *Parker,* 3 Allen, 556, 558. *Bassett* v. *Fidelity & Deposit Co. of Maryland,* 184 Mass. 210, 214. The facts in *Farrar* v. *Parker* were somewhat different from those in the case at bar but the governing principle is the same. This rule, although not universally prevalent, is established by our own decisions and in our opinion is supported by the weight of authority. *Weer* v. *Gand,* 88 Ill. 490. *Garber* v. *Commonwealth,* 7 Penn. St. 265. *Belcher* v. *Branch,* 11 R. I. 226.

There is no controversy as to the period of time covered by the accounting. Citation on the third account was issued and due return was made thereof. The judge found that an appearance was entered for the surety and its counsel was present at the time set for hearing. The administrator of the goods and estate not already administered was also present. The judge filed supplementary findings of facts of this tenor: "Extended hearings were held upon the first and second accounts of this executor wherein it appeared that the inventory filed is false with respect to items 9 to 30 inclusive, in that notes set forth in said inventory against items 9, 11, 13, 15, 17, 19, 21, 23, 25, 27 and 29 did not in fact exist and that what purported to be notes so listed were papers fraudulent and void. In the first account Schedule A items 2 to 12 inclusive and item 14 are fictitious. In the second account Schedule A items 2 to 13 inclusive and items 15 to 26 inclusive are also fictitious and the notes set forth as items 2, 4, 6, 8, 10 and 12 are fraudulent and void. At the death of the testatrix the executor was indebted to her for money received by him and converted to his own use $68,746.02. With the assistance of a public accountant and unusual coöperation of counsel a revised first and second account stated to be 'third account revising the first and second accounts' was filed in condensed form and that account I allowed." The summary of the third account was as follows:

"Said accountant charges himself with the
several amounts received as stated in
Schedule A, herewith exhibited,    .    .    $97,901.63
And asks to be allowed for sundry payments
and charges, as stated in Schedule B,
herewith exhibited,    .    .    .    .    .    5,892.08

Balance as stated in Schedule C, herewith
exhibited,    .    .    .    .    .    .    .    $92,009.55."

Schedule A of the third account contained two items only
as follows:

" Dolls. Cts.

Amount of personal property according to
inventory, or    .    .    .    .    .    .    57,886 83
Balance of next prior account    .    .    .
Amounts received from income, gain on sale
of personal property over appraised value,
and from other property, as follows:
Gain over inventory upon revised account
by assets not heretofore listed    .    .    .    40,014 80."

Schedule B consisted of twenty-eight items showing dis-
bursements in detail amounting to $5,892.08. Schedule C
was as follows: "This schedule contains all items of per-
sonal property now in possession of the accountant. Bal-
ance chargeable    92,009 55." Thus it appears that the
accountant is charged with personal property according to
the aggregate stated in an inventory which has been found
to be false, fraudulent and void as to numerous items, that
the Schedule A in each of the two preceding accounts con-
tained items which were fictitious, fraudulent and void.
The account allowed however does not depend at all upon
those schedules but it rests wholly for one item on the
discredited inventory. The corrections of that false in-
ventory are not stated in the account although the basis
for such correction appears in the findings of the trial judge.
The substance and effect of the finding when applied to
the inventory are that twenty-two out of its thirty-two

items are false; eleven of those purport to be notes of divers individuals and the other eleven are items of interest on those same notes. By adding those twenty-two items and subtracting that sum from the total amount of the inventory, it may be that the true inventory will be found. It may be inferred that the total for which the accountant ought to be charged is established by the single item showing a gain over the total of the inventory by items of assets of the estate not hitherto disclosed anywhere and not here shown in any detail. When that single item is added to the total of the discredited inventory there is nothing to indicate from what sources the items of this single item of gain are derived. It is manifest however that neither of these items can be correct. The total of the inventory must be false because several of its items are found by the trial judge to be nonexistent. If the inventory was to be used as the basis of the final account it ought to have been reduced by deduction of the false items. It is equally manifest that the items of gain arising from assets not hitherto listed must be false, because their aggregate when added to the false inventory makes the correct balance. That cannot be a correct total of gains because the real gains must be larger in order to offset the nonexistent items not actually subtracted from the inventory. If the total amount of assets received by the accountant is correct, as has been found, both the items by which it is shown on the account as allowed must be false.

The question of law is whether the account in the circumstances disclosed rightly could have been allowed in this form. It is provided by G. L. (Ter. Ed.) c. 206, § 2, that accounts shall "consist of three schedules, of which the first shall show the amount of personal property according to the inventory, or, instead thereof, the amount of the balance of the next prior account, as the case may be, and all income and other property received and gains from the sale of any property or otherwise . . . ." It is also provided by Rule 10 of the current rules of the probate courts: "Probate accounts should be stated in schedule as follows: 1. *Schedule A.* Containing cash items only,

beginning with the amount of cash in the inventory or with the cash balance of the previous account, followed by items of every sum of money received, whether from the sale of real or personal estate or otherwise. 2. *Schedule B.* Containing every sum of money paid for any purpose. 3. *Schedule C.* Containing all items of personal estate (other than cash) whether the same were stated in the inventory or subsequently came to the possession or knowledge of the accountant, together with the valuation put upon them by inventory or by the accountant. 4. *Schedule D.* Containing all items of property that have been delivered by order of the court or otherwise without having been converted into cash." (G. L. [Ter. Ed.] c. 215, § 30.)

The meaning of the statute and the rule has never been brought before this court for decision so far as we are aware. It was said in *Wood* v. *Farwell*, 195 Mass. 559, 560, "Until the court is satisfied by affirmative evidence that the account is correct, it cannot be allowed." It is not necessary to determine the extent to which there may be abbreviation and condensation in probate accounts. It may be that it would be impracticable in some instances to encumber the records of the probate courts with items showing every receipt and every expenditure. Of course all items must be disclosed on the books of the accountant. Questions of that nature are not relevant to the present record. The decree allowing the account ought to have stated the truth as to the amount of property which came to the hands of the accountant and the sources from which it was derived. It utterly failed to do that. It was therefore not such an account as rightly could bind the surety. The decree allowing the final account (1) ought to have corrected the inventory in order that it might conform to the facts found and (2) ought to have stated the items of the gains received by the accountant over and above the true amount of the inventory. The account as thus corrected would have shown in Schedule A the total for which the accountant was rightly chargeable. The decree ought to state the account in such form that it will be intelligible as to both details and totals.

It follows that the decree must be reversed and the cause remanded to the Probate Court for proceedings not inconsistent with this opinion.

*Ordered accordingly.*