RAYMOND T. KING, administrator *de bonis non* with the will annexed, *vs.* JOHN J. MURRAY & another.

Hampden.    March 8, 1934. — May 26, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & LUMMUS, JJ.

*Executor and Administrator*, Liability on bond, What are assets of estate.

A claim for the entire amount of money stolen from a testator before his death by one who afterward became executor of his will was an asset of the testator's estate for which the executor was under obligation to account, although at the time of the death of the testator the executor did not have assets from which he could have restored to the testator the money so stolen; and if the executor fails to account for such money, a surety on his bond is liable for the amount thereof.

PETITION, filed in the Probate Court for the county of Hampden under G. L. (Ter. Ed.) c. 205, § 7A, on August 17, 1933.

The petition was heard by *Denison*, J. Material facts, rulings by the judge, and a final decree entered by his order are described in the opinion. The respondent surety company appealed.

*R. H. Holt*, (*W. F. Davis, Jr.*, with him,) for the respondent Massachusetts Bonding and Insurance Company.

*E. H. Lyman, Jr.*, for the petitioner.

PIERCE, J. This is an appeal by the surety upon the bond of a removed executor from a final decree in a petition in equity brought under G. L. (Ter. Ed.) c. 205, § 7A, ordering "that the obligations of said bond be enforced by the payment to the petitioner of the sum of $70,000 and interest thereon from August 17, 1933," and costs.

The facts pertinent to the appeal are, in substance, as follows: One Jane F. King died April 9, 1929. Prior to her death, the respondent John J. Murray, in certain dealings with her, fraudulently converted to his own use money

entrusted to him to invest, over a period running from March, 1923, to January, 1928. John J. Murray was appointed executor of the will of Jane F. King by decree entered May 1, 1929, and qualified by a bond for $75,000 without sureties. He filed an inventory in which he did not charge himself with the stolen funds but instead listed as assets certain alleged notes which, with one exception, were "papers fraudulent and void." On October 8, 1930, Murray was ordered to file a new bond with sureties, and thereupon filed the bond now in suit, in the form prescribed by law, in the sum of $70,000. This bond was duly approved by the court on October 14, 1930. On November 12, 1931, Murray was removed as executor, and the petitioner was appointed administrator *de bonis non* with the will annexed on December 16, 1931, and qualified by giving bond as the law directs. Extended hearings were held upon the first and second accounts of the executor and at the conclusion of the hearings the executor filed a third account, revising the first and second accounts, that was duly allowed by the Probate Court. Upon appeal of the surety this court reversed the decree of the Probate Court and remanded the case to that court for further proceedings not inconsistent with the decision rendered. *Murray* v. *Massachusetts Bonding & Ins. Co.* 283 Mass. 15. Thereafter, by decree dated July 20, 1933, the Probate Court settled the accounts of the executor by correcting the inventory and itemizing the schedules, and adjudged that the executor had in his hands as of March 1, 1932, $92,009.55, assets of the decedent's estate to be accounted for by him. There was no appeal from this decree. The amount found due included $68,746.02 (which was converted to his own use by the executor prior to the death of the testatrix on April 9, 1929) with interest thereon, $12,051.99, to said date, less interest $8,981.76 paid to the testatrix, plus interest on balance $71,816.25 to March 1, 1932, $12,576.89, making a total of $84,393.14, plus assets of the estate $11,754.79 and interest thereon to March 1, 1932, $1,753.70, less disbursements and interest on disbursements, $5,892.08; that is a total of $92,009.55.

The Massachusetts Bonding and Insurance Company in its amended answer admits substantially all the material allegations of the petition, and sets up that the execution should issue, not as decreed for the penal sum of the bond but for such amount as represents assets which did in fact come into the possession of Murray as executor, less proper credits (G. L. [Ter. Ed.] c. 205, §§ 1, 7A); that Murray was insolvent and without funds at the time of his appointment as executor, which was shortly after the death of the testatrix; and that the amount misappropriated by him prior thereto should not be included in determining the amount for which execution should issue against the company. In passing it is to be noted that the evidence offered by the company to prove the insolvency of Murray at the death of the testatrix, and which was excluded by the judge, was not followed by any offer of proof of such insolvency until after the close of the evidence. The offer of proof was then excluded. *Leland* v. *Converse*, 181 Mass. 487. We shall consider the case upon the assumption, not proved, that Murray was not able to pay his debt to the testatrix at the time of her death.

The questions presented on the record are: "1. Is the surety on an executor's bond liable for money stolen by the executor from the testatrix before her death? 2. Is the surety entitled to show under the above circumstances that the executor had in fact no assets out of which he could have paid the estate the amount so stolen or any part of it?"

The applicable statute, G. L. (Ter. Ed.) c. 205, § 31, reads, so far as material to the issue presented, as follows: "If the court finds that there has been a breach of the condition of the bond of an executor or administrator, it shall, upon a hearing in equity, award execution in the name of the plaintiff as follows: . . . Third, If the action is brought for a breach of the condition in not accounting for the estate as required by law, execution shall be awarded, without expressing that it is for the use of any person, for the full value of all the estate of the deceased which has come to the hands of the executor or administrator and for which he does not satisfactorily account, and for all damages caused by his neglect or maladministration."

The general rule is that the decree of a probate court allowing an account is binding upon all interested parties including sureties on the bond of the accountant. *Farrar* v. *Parker,* 3 Allen, 556, 558. *Bassett* v. *Fidelity & Deposit Co. of Maryland,* 184 Mass. 210. *Murray* v. *Massachusetts Bonding & Ins. Co.* 283 Mass. 15. *Stovall* v. *Banks,* 10 Wall. 583. The bonding company concedes that where a debtor is appointed executor or administrator of his creditor he must account for his obligation as a cash asset of the estate and that the debt is discharged by the appointment. *Stevens* v. *Gaylord,* 11 Mass. 256. *Kinney* v. *Ensign,* 18 Pick. 232, 236. But it contends upon the authority of *Kinney* v. *Ensign* that this fiction "will never be allowed to go so far as to work wrong and injustice"; and that the statement in *Ipswich Manuf. Co.* v. *Story,* 5 Met. 310, 313, that "the debt becomes, *prima facie,* assets in the hands of the administrator or executor, to be accounted for and adjusted in probate account, as assets actually realized," is not applicable; and that the case of *Leland* v. *Felton,* 1 Allen, 531, did not involve directly the sureties on the executor's bond, and does not decide any question as to the effect of the executor's insolvency on their liability. The bonding company relies upon *Pettee* v. *Peppard,* 120 Mass. 522, which affirmed the principle stated in *Kinney* v. *Ensign,* that the rule of constructive payment will not be applied where it works substantial injustice. It contends that anything to the contrary in *Tarbell* v. *Jewett,* 129 Mass. 457, was wholly gratuitous because the question of the sureties' liability was not involved in the case. See *Brooks* v. *Hope,* 139 Mass. 351.

The issue presented by the appellant was directly involved in the case of *Bassett* v. *Fidelity & Deposit Co. of Maryland,* 184 Mass. 210. This was an action of contract against the surety on an executor's bond, where a technical breach was admitted and the case was referred to an assessor to determine the amount for which execution should issue. The assessor found that the executor and his firm, who were debtors of the testatrix, became financially embarrassed and failed after the appointment of the executor, but he refused a request to find that the firm and its members were insolvent

at the time of the testatrix's death. Upon a motion to recommit for the purpose of producing evidence as to the financial condition of the executor and his firm at the time of the appointment, the motion was denied on the ground that such evidence was immaterial. The full court sustained the ruling, and thereby established the legal proposition that the sureties on an executor's bond are liable for the indebtedness of the executor to the testator even though the executor has no assets at the time of his appointment out of which the payment of the indebtedness could have been made. It was said in the opinion at page 214 that "the obligation of a surety on a probate bond is the obligation of the principal"; and that the "ground on which it was held that a surety has a right of appeal in such a case was that the decree settling the account of the principal 'if once properly established, fixes the amount of liability of the sureties on their bond.'" This principle was assumed to be the law in *Leland* v. *Felton,* 1 Allen, 531, though not necessary to that decision. It was also recognized as a true statement of the law applicable to the obligation of sureties on probate bonds in *Tarbell* v. *Jewett,* 129 Mass. 457, 468, and in *Chapin* v. *Waters,* 110 Mass. 195, 197. A request to overrule the statement or dictum in *Leland* v. *Felton,* 1 Allen, 531, was made by the defendant in *Bassett* v. *Fidelity & Deposit Co. of Maryland,* 184 Mass. 210, 215, and was denied, after careful consideration, with ample citation of authorities. A number of jurisdictions have followed and adopted the so called "Massachusetts rule" to the effect that the bond of an executor or administrator covers debts owing from the representative to his testator or intestate irrespective of his ability to pay the same. *Wright* v. *Lang,* 66 Ala. 389. *Treweek* v. *Howard,* 105 Cal. 434. *Judge of Probate* v. *Sulloway,* 68 N. H. 511; 49 L. R. A. 347; 73 Am. St. Rep. 619. *United Brethren* v. *Akin,* 45 Ore. 247; 66 L. R. A. 654. *Twitty* v. *Houser,* 7 S. C. 153. Many cases collected in the appellant's brief hold that the sureties on an administrator's bond are not liable for debts due from the principal to the decedent if it appears that such principal during the administration period was insolvent and unable to pay. We think, however,

that .the rule laid down in *Leland* v. *Felton,* 1 Allen, 531, which was recognized as the true rule in *Bassett* v. *Fidelity & Deposit Co. of Maryland,* 184 Mass. 210, should be followed and .that the rule is applicable to the facts of this case.

Without further discussion we are of opinion the decree should be affirmed.

*Ordered accordingly.*