CARLEEN WOOD *vs.* JOHN S. TUOHY, administrator,[1] & others.[2]

No. 04-P-1563.

Norfolk. January 10, 2006. - September 14, 2006.

Present: GELINAS, DOERFER, & KAFKER, JJ.

*Will,* Testamentary capacity, Undue influence. *Bond,* Conservator, Limitation of liability.

A probate judge properly disallowed a certain will that the decedent executed while incompetent and that was the product of undue influence exerted by his niece. [338-339]

In an action in Probate and Family Court regarding the liability of a surety on the statutory bond that a deceased ward's niece furnished as the ward's conservator, the surety bore liability equally with the conservator for the conservator's failure to inventory all of the ward's property that she possessed or of which she had knowledge, as required under G. L. c. 205, § 1(6), and nothing in § 1(6) indicated that the date of appointment as a conservator established an initial point before which a conservator need not account [339-345]; further, while the judge appropriately exercised his discretion in placing a temporal limit on the accounting as a condition of the niece's appointment as conservator, the entire property subject to her defalcations occurring prior to her appointment should properly have been included in the inventory as cash [345-348].

PETITION filed in the Norfolk Division of the Probate and Family Court Department on April 13, 1998.

PETITION filed in the Barnstable Division of the Probate and Family Court Department on February 16, 2000.

After consolidation, the cases were heard by *Paula M. Carey,* J.

*Michael Eby* for the intervener.

*Thomas I. Elkind* for the plaintiff.

*Harris G. Gorab* for John S. Tuohy.

[1] Of the estate of Harry Anderson.

[2] Sabrina J. A. Vaz; Debra Doucette, administratrix of the estate of Stella Crowell; and Western Surety Company, intervener.

*Gerard M. Mahaney* for Debra Doucette.

GELINAS, J. At issue in this appeal are two of three judgments of the Probate and Family Court; one involves the disallowance of a will of Harry Anderson, and one declares that Western Surety Company is liable in the amount of $358,022.62 as surety.[3] In the first, dated June 9, 2003, the judge disallowed the probate of two wills ostensibly made by Anderson, one dated September 8, 1996, and the other August 19, 1997. Only the disallowance of the second will is at issue in this appeal. The effect was to leave Anderson intestate. The second judgment, dated October 7, 2003, determined that the defendant Western Surety Company (Western Surety) was liable in the amount of $358,022.62 as surety on the statutory bond that Sabrina Vaz furnished as Anderson's conservator.

Western Surety's liability is predicated on yet a third decision of the court, not appealed here, dated June 9, 2003, holding that Sabrina Vaz, Anderson's niece as well as his conservator, was liable to Anderson's estate, and thus to his heirs at law, for $406,862.38. Vaz's liability, in turn, is based on the judge's finding that Vaz had essentially pillaged Anderson's property, both before and after being appointed his conservator, during the time that he was living with her.

Western Surety, the sole appellant, first contends that Anderson's 1997 will should have been allowed. This will left the residue of Anderson's estate to Vaz and, if allowed, would nullify any liability on Western Surety's part. Western Surety further argues that, should we conclude that Anderson's intestacy be allowed to stand, its only liability should be for Vaz's improper actions occurring after she was appointed as conservator, and that it is not liable for her misappropriation of Anderson's property prior to her appointment.[4] We hold that the judgment disallowing Anderson's 1997 will was correct, and

---

[3]The two actions, commenced in different counties, were transferred to Norfolk County and consolidated for trial. Although separate findings and judgments issued, the cases were again consolidated by the Probate and Family Court for assembly and transmission to the Appeals Court.

[4]Western Surety does not contest the Probate and Family Court's findings and rulings with respect to defalcations occurring before or after Vaz's appointment. The propriety of Vaz's actions, and the amounts she misappropriated, are not in dispute. Vaz has not appealed.

that Western Surety is liable for $406,862.38, the full amount of Vaz's defalcations.

We outline the facts generally, reserving detail for our discussion of the issues. Some of the relevant facts are stipulated; others are taken from the order of the probate judge (not the trial judge) who established the bond requirements, and from the detailed findings of the trial judge. The remaining parties to this appeal are John Tuohy, successor conservator appointed in September, 1999, to succeed Vaz, and appointed administrator of Anderson's estate upon Anderson's death in December, 1999; Carleen Wood, niece and heir at law of Anderson; and Debra Doucette, as administrator of the estate of another heir at law, Stella Crowell, Anderson's half-sister. On his death, Anderson, who had no children and who had survived his wife, had three heirs: his half-sister Stella Crowell, who died subsequent to Anderson, and two nieces, Wood (the proponent of the 1996 will) and Vaz (the proponent of the 1997 will).

In 1996, Wood caused Anderson to deed his house to her (he was to retain a life estate) and to make a will in which he left the remainder of his estate to an unspecified trust for the protection of animals. Anderson apparently did not know the nature of the papers he signed, and Wood took pains to assure that he never found out. Nonetheless, Anderson did find out, became angry, and took steps, with Vaz's help, to invalidate the transfer. The probate judge found the 1996 will invalid. That finding is not in dispute here.

In 1997, after helping Anderson unwind the 1996 transfer of his house to Wood, Vaz arranged, through a lawyer retained by her, to have Anderson make a new will. The evidence showed, and the judge found, that the will as executed differed substantially from what apparently had been discussed with Anderson. After this will was signed, Anderson had some medical setbacks, and in December, 1997, he went to live with Vaz.

Vaz assumed complete control over Anderson's financial affairs. She began to make gifts from his assets to herself, her husband, and other family members, and to use his money for improvident investments. When Wood discovered that Anderson was living with Vaz (Vaz had attempted to keep this matter from Wood), Wood petitioned for the appointment of a conservator.

Vaz and Anderson, through counsel, opposed the petition. The probate judge acting on the petition, who was not the trial judge, concluded that a conservator was necessary. Concerned with allegations of impropriety on Vaz's part, he ordered Vaz to post a bond in the amount of $600,000, with surety, and to account for her dealings with Anderson's property from December 1, 1997, the date Anderson came to reside with her. Vaz posted the bond required, with Western Surety acting as surety. Vaz continued to misappropriate Anderson's funds after her appointment. Vaz's initial accounting did not pass muster, and the improprieties became apparent. Appointed on March 31, 1999, Vaz was removed as conservator in September, 1999, and Tuohy, an independent conservator, was appointed in her place.

Anderson died in late December, 1999. Vaz petitioned for the allowance of the 1997 will, with Wood responding with the 1996 will.

*The 1997 will.* As to invalidation of the 1997 will, the trial judge essentially found, based in large part on her determination of credibility, that Anderson was incompetent and did not understand the nature of what he was doing when he executed the will, and that, in any event, the will was the product of Vaz's undue influence.

Western Surety essentially argues that the court should have reached different conclusions on the conflicting evidence presented. The argument is misplaced: it more or less ignores the judge's findings on incompetence.

The judge's findings of fact are well supported in the record. Absent clear error, they remain undisturbed. Mass.R.Dom.Rel.P. 52(a). *Felton* v. *Felton*, 383 Mass. 232, 239 (1981). That the evidence might have warranted a different decision does not make the judge's ruling invalid. *Yannas* v. *Frondistou-Yannas*, 395 Mass. 704, 709-710 (1985).

The evidence here was more than sufficient to show that Anderson was incompetent, see *Goddard* v. *Dupree*, 322 Mass. 247, 250 (1948); *Palmer* v. *Palmer*, 23 Mass. App. Ct. 245, 250 (1986), and that he had been the subject of undue influence, see *Neill* v. *Brackett*, 234 Mass. 367, 369-370 (1920); *Heinrich* v. *Silvernail*, 23 Mass. App. Ct. 218, 223 (1986); *Baxter* v. *Grasso*,

50 Mass. App. Ct. 692, 696 (2001). There was no error in the trial judge's determination that the 1997 will was invalid.

*Liability on the bond.* We next address the question of Western Surety's liability on its bond for Vaz's preappointment acts with regard to Anderson's property. The trial judge concluded (1) that the March 31, 1999, order appointing Vaz as conservator acted to inform Western Surety, and it should have known, despite its stipulated lack of actual knowledge, that there existed serious questions regarding Vaz's conduct before her appointment; (2) that the scope of the order, requiring an accounting from December 1, 1997, was intended to expand the bond, and thus the surety's liability, to cover Vaz's preappointment conduct, dating from the time Anderson came to live with her; (3) that Vaz owed Anderson's estate $406,862.38 plus interest[5] from January 1, 1998, as a result of her misapplication of Anderson's funds; (4) that Western Surety was responsible for Vaz's conduct with regard to whatever of Anderson's assets came into her possession prior to her appointment that were still under Vaz's control as of the date of her appointment in March, 1999; and (5) that Vaz became a constructive trustee of assets misappropriated between December 1, 1997, and March 31, 1999, at least with respect to those over which she still had control as of the date of appointment. These amounted to $358,022.62, and the judge found that Vaz had a duty to reconvey them to the estate and, having failed so to do, she failed to carry out her duties as conservator. In short, the judge ruled that Western Surety became liable for Vaz's preappointment misdeeds but only to the extent of assets over which Vaz had control at the time of her appointment.

To the contrary, Western Surety argues that, as matter of law, it can not be held liable for any of Vaz's actions occurring prior to Vaz's appointment and the issuance of the bond. It contends that Vaz's misdeeds in managing Anderson's affairs prior to her appointment on March 31, 1999, are not governed by G. L. c. 205, § 1,[6] but rather by common-law fiduciary duties associated with a power of attorney that Anderson had executed in her

---

[5]None of the parties, including Western Surety, challenges the allowance of the account or contests the amount.

[6]With respect to conservators, G. L. c. 205, § 1(6), provides in part:

favor, or by the joint tenancy in property Vaz had established with Anderson in certain of his bank accounts, and from which she had taken money without authority. Contending that surety liability should be imposed only for conduct that violates Vaz's duties as conservator, Western Surety argues that opening a surety to retroactive liability here would have serious negative public policy implications. Western Surety concedes that of the amount it was ordered to pay, some $212,643.36 was misappropriated to Vaz's own use during the period of her conservatorship, and it does not question its liability in this regard. It argues that its liability should therefore be reduced by $145,379.26, the amount determined to have been misappropriated between December 1, 1997, and her March 31, 1999, appointment, although the misappropriated funds remained under Vaz's control during the time of her conservatorship.

Wood, Tuohy, and Doucette argue, on authority of *Choate* v. *Arrington*, 116 Mass. 552 (1875), *McIntire* v. *Linehan*, 178 Mass. 263 (1901), and *Koutoudakis* v. *Great Am. Indem. Co.*, 285 Mass. 466 (1934), that Western Surety is responsible for any assets Vaz received before, as well as after, the execution of the bond, and before, as well as after, her appointment as conservator. While we agree with the argument, for reasons we

"[B]efore entering upon the duties of his trust, [the conservator] shall give bond with sufficient sureties, in such sum as the probate court may order, payable to the judge of said court and his successors, and with condition substantially as follows: . . .

"First, To make and return to the probate court at such time as it orders a true inventory of all the real and personal property of the ward which at the time of making such inventory shall have come to his possession or knowledge;

"Second, To manage and dispose of all such property according to law and for the best interests of the ward, and faithfully to perform his trust in relation to such property and to the custody, education and maintenance of the ward;

"Third, To render upon oath at least once a year until his trust is fulfilled, unless he is excused therefrom in any year by the court, a true account of the property in his hands, including the proceeds of all real property sold or mortgaged by him and of the management and disposition thereof, and also to render such account at such other times as said court may order;

"Fourth, At the expiration of his trust to settle his account in the probate court or with the ward or his legal representatives, and to pay over and deliver all the property remaining in his hands, or due from him on such settlement, to the person or persons lawfully entitled thereto."

set out below, we think that reliance on these authorities is misplaced and that the cases are inapposite. In the first two cited cases, the surety was charged for defalcations occurring prior to execution of the bond, but not, as here, for matters occurring before appointment of the fiduciary. *Choate* v. *Arrington, supra* at 556-557. *McIntire* v. *Linehan, supra* at 265-266. In *Koutoudakis* v. *Great Am. Indem. Co., supra* at 467, the surety was charged with maladministration of property not technically a part of the estate, but which came into the fiduciary's hands, again after appointment.

Wood, Tuohy, and Doucette also argue that the trial judge was correct in her judgment that Western Surety should be held liable for defalcations occurring before Vaz's appointment and before Western Surety issued its bond, because a condition of the Probate and Family Court order under which Vaz was appointed required that she account for all of Anderson's property that had come into her possession from December 1, 1997, and the order established the scope of both Vaz's and the surety's engagement. This is so, they contend, even though Western Surety had no actual knowledge of the original probate order requiring Vaz to account for property that came into her possession from December 1, 1997, forward, because the requirements were easily susceptible of being known by Western Surety. They urge that we affirm the judgment requiring Western Surety to pay to the extent of property remaining in Vaz's hands or under her control as of the date of her appointment. For the reasons set out below, we think this argument in error as well.

The contract of a surety "sets the limits of the surety's liability." *Peerless Ins. Co.* v. *South Boston Storage & Warehouse, Inc.*, 397 Mass. 325, 327 (1986). The scope of a surety's liability is determined by the intent of the parties. *Ibid.* "[T]he 'terms and conditions upon which one becomes a surety are to be ascertained from the instrument creating that undertaking construed in reference to the usages of business, the object sought to be accomplished, the relations of the parties to each other, and the attending circumstances.' " *Roger Williams Grocery Co.* v. *Sykes*, 357 Mass. 485, 488-489 (1970), quoting from *Miller* v. *Perry*, 333 Mass. 155, 158 (1955).

Here, the bond and surety provided by Vaz and Western Surety were on a form provided by the Probate and Family Court. In

the document, Vaz recited that she accepted appointment as conservator, and stood "bound . . . to perform the statutory conditions of said bond." Western Surety's endorsement provided that it stood "bound as surety . . . to perform the statutory condition." The probate judge who set the condition of Vaz's appointment endorsed the bond as examined and approved. The scope of the contract between the parties and the court was that Vaz and Western Surety stood bound to perform the statutory conditions required of conservators set out in G. L. c. 205, § 1(6). It has long been held that "the obligation of a surety on a probate bond is the obligation of the principal." *Bassett* v. *Fidelity & Deposit Co.*, 184 Mass. 210, 214 (1903).

Our courts have also long held that liability on a probate bond given to perform the statutory conditions is limited to the requirements of the statute, and "if more be added than the law requires, although it will not vitiate the whole bond . . . yet no breach can be assigned in any part of the condition not included within the requisitions of the statute." *Hall* v. *Cushing*, 9 Pick. 395, 403 (1830). We think the principle sound, and that, where a bond is given to perform the statutory conditions, liability will be limited to the obligations that the fiduciary properly assumes under the statute, even though a Probate and Family Court order would seem to require more.[7] While Vaz may have been personally aware of the conditions of the judge's order, her obligation under the bond, and thus that of the surety, as accepted by the probate judge, was only to perform the statutory condition. Here, then, Western Surety's liability is governed solely by requirements of the statute.

We look, then, to the obligations set out in G. L. c. 205, § 1(6), and first consider the case of *Dawes* v. *Edes*, 13 Mass. 177 (1816). In *Dawes*, the sureties argued, as here, that with respect to the statutory condition[8] for administrators, the require-

---

[7]While the language of G. L. c. 205, § 1(6), as set forth in note 6, *supra*, requires that the condition be "substantially" as described in the statute, in our view nothing would prevent a probate judge from ordering a fiduciary to give bond with surety to cover activities other than those required by the statute. Such a bond, and the contract of surety, would, of necessity, have to spell out those additional conditions. Nothing in the bond here evidenced any requirement other than those established by statute.

[8]The statute at issue in *Dawes* v. *Edes*, *supra*, St. 1783, c. 36, was a

ment that an administrator render an inventory and account of such property *"which have or shall come* to the hands [ ] of the administrator" (emphasis original), *ibid.*, signaled a legislative intent to charge a surety for defalcations occurring only after the appointment of the administrator, and that the statutory condition should have no retrospective operation covering property in the hands of the administrator prior to appointment. The *Dawes* court disagreed, ruling that the condition of the bond, as prescribed in the statute, was to cover everything belonging to the estate of the deceased that had "come to the hands of the administrator since the death of the deceased, as well before as after the execution of the bond." *Ibid.* Accordingly, the surety was liable for any property that had come to the administrator's hands, before as well as after the execution of the bond and the granting of administration. While the language of G. L. c. 205, § 1, is somewhat different from the statute at issue in *Dawes*, and *Dawes* involved a fiduciary other than a conservator, the principle of retroactive liability for both principal and surety is clearly established.

Turning to the language of G. L. c. 205, § 1(6), we discern a like legislative intent with respect to the obligations of a conservator and the surety regarding property that comes into the hands of a conservator before appointment, and before execution of the bond. Our interpretation of a statute "must be reasonable and [must be] supported by the purpose and history of the statute." *Wright* v. *Collector & Treasurer of Arlington*, 422 Mass. 455, 457-458 (1996). "[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934).

The first of the statutory conditions placed upon a conservator, to which the conservator and the surety stand bound, is "[t]o make and return to the probate court at such time as it orders a true inventory of all the real and personal property of

predecessor to G. L. c. 205, § 1.

the ward which at the time of making such inventory shall have come to his possession or knowledge." G. L. c. 205, § 1(6) (see note 6, *supra*). We read that condition to require a conservator to inventory all of the ward's property without regard to whether it came into the conservator's possession or knowledge before or after her appointment, or before or after the execution of the bond. The sole temporal indicator explicit in the statute is the time of making the inventory; the statute is silent with respect to any other temporal boundary circumscribing the possession or knowledge of the ward's property. Following the principle enunciated in *Dawes, supra,* we think this language sufficient to require that Vaz, as conservator, inventory all property of Anderson's that came into her possession or of which she had knowledge at any time, both before and after her appointment as conservator. Had the Legislature wished to limit the inventory of property to that which came into her possession or of which she had knowledge only after appointment, it could easily have included such a limitation in the statutory language.

We conclude, therefore, that Vaz was required to inventory all of Anderson's property which she possessed, or of which she had knowledge. If she failed so to do, or to fulfil the other statutory conditions[9] with respect to such property, then Western Surety bore liability equally with her for such failure.

Western Surety argues that the relevant time for a conservator's accounting, as required under G. L. c. 205, § 1(6), begins with the date of the conservator's appointment. Nothing in the statute indicates that the date of appointment establishes an

[9]The second, third, and fourth conditions of G. L. c. 205, § 1(6), all relate to property initially included in the inventory. According to the second condition, the conservator is to "manage and dispose of all such property according to law and for the best interests of the ward, and faithfully to perform his trust in relation to such property and to the custody, education and maintenance of the ward"; the third condition requires that the conservator "render upon oath at least once a year until his trust is fulfilled, unless he is excused therefrom in any year by the court, a true account of the property in his hands, including the proceeds of all real property sold or mortgaged by him and of the management and disposition thereof, and also to render such account at such other times as said court may order," while the fourth condition requires that "[a]t the expiration of his trust to settle his account in the probate court or with the ward or his legal representatives, and to pay over and deliver all the property remaining in his hands, or due from him on such settlement, to the person or persons lawfully entitled thereto." G. L. c. 205, § 1(6). See note 6, *supra.*

initial point before which a conservator need not account. The statutory basis for a conservator's account is the inventory that is required to be filed under the statute; it is this inventory that provides the initial point of reference for the conservator's duties and accounting. See G. L. c. 206, § 2.[10]

*Limitation of liability.* While under the statutory condition Vaz was required to inventory all of Anderson's property that had come to her possession or of which she had knowledge at the date of filing the inventory, without temporal limitation, in this case the probate judge circumscribed the accounting period, and thus the liability of both conservator and surety, by providing that Vaz need account for the ward's property only from December 1, 1997, the date that Anderson moved to Vaz's house. We think that this limits, rather than expands, both Vaz's and Western Surety's liability, as it precluded the requirement of accounting for any of Anderson's property that Vaz might have possessed, or about which she may have had knowledge, prior to December 1, 1997.

It is settled law that in the appointment of a guardian, "[a] probate judge has substantial discretion . . . . The power is not without limits, and the court must exercise its power with a view to the best interests of the ward. In addition, the person appointed must be found to be suitable to serve as guardian." *New England Merchants Nat. Bank* v. *Spillane*, 14 Mass. App. Ct. 685, 693 (1982) (citations omitted). We see no reason that such discretion should be less when exercised in the appointment of a conservator. We think the appointing judge was well within his discretion here in placing a temporal limit on accounting as a condition of Vaz's appointment. Exercise of his discretion in this way was appropriate; the probate judge both required a bond "substantially" as required by G. L. c. 205, § 1(6), and in our opinion placed no condition other than that required by the statute.

---

[10]General Laws c. 206, § 2, as amended by St. 1973, c. 669, § 1, provides in relevant part: "Accounts rendered to the probate court by [a] . . . conservator shall be for a period distinctly stated therein, and consist of three schedules, of which the first shall show the amount of personal property, and with respect to a . . . conservator also the amount of the real property, according to the inventory, or, instead thereof, the amount of the balance of the next prior account, as the case may be, and all income and other property received and gains from the sale of any property or otherwise."

The inquiry, however, does not end here. Based on the findings of the probate judge with respect to Vaz's handling of Anderson's funds, the entire property subject to Vaz's defalcations occurring prior to her appointment, limited temporally from December 1, 1997, should properly have been included in the inventory as cash.

, In strong language, the trial judge found that, from December 1, 1997, to the date of Vaz's appointment as conservator in March, 1999, Vaz misused the large part of Anderson's funds. The trial judge found that, at least beginning in March, 1998, Vaz "began a calculated scheme to obtain control [of] and use [Anderson's] assets for her own purpose." The judge found that during the period of time in question, Anderson did not know what Vaz was doing with his money and that Vaz "dissipated all of [Anderson's] assets while [Anderson] was still alive and during the period she was able to control him." The trial judge concluded that because of her actions, Vaz's net liability to Anderson's estate was $406,862.38.

Where Vaz had taken the preappointment assets under these circumstances, the amounts taken became debts owed from Vaz to Anderson. See *Cooke* v. *Plaisted*, 181 Mass. 82, 85, 89 (1902) (fraud of plaintiff created indebtedness to defendant); 11 U.S.C. § 523(a)(4) (2000) (debt created by reason of fraud or defalcation not dischargeable in bankruptcy). When Vaz, as debtor, was appointed as conservator of her creditor, Anderson, she is deemed to have made constructive payment of the debt, and must account for her obligation as a cash asset of the estate. The debt was discharged by the appointment, and becomes as cash in the hands of the fiduciary, see *King* v. *Murray*, 286 Mass. 492, 495 (1934), and cases cited therein (this is known as the Massachusetts rule, *id.* at 496), which must be accounted for as assets actually realized. See *Ipswich Mfg. Co.* v. *Story*, 5 Met. 310 (1842); *Bassett* v. *Fidelity & Deposit Co.*, 184 Mass. at 212 ("on broad principles of policy," common law of England required that executor or administrator, who was not obliged to accept office, "must yield all controversy as to the debt due from himself and treat it as an asset of the estate," as paid in cash upon appointment). Accord *In re Estate of Jones*, 115 Cal. App. 664, 667, 670 (1931) (at common law debt owed

by executor incurred before appointment becomes cash in hand when appointment made, and surety is liable whether or not principal becomes insolvent before or after appointment).[11]

We think the principle equally applicable to a conservator, and we follow the Massachusetts rule here, holding that Vaz became indebted to Anderson upon her obtaining and disposing of the preappointment funds under the circumstances found by the trial judge, and that upon her appointment these debts became as cash, to be inventoried and accounted for by her, and that she neither accounted for the cash nor distributed it to Anderson's representatives on his death. Western Surety's obligation on its probate bond here is the liability of Vaz, the principal, and the liability is joint. *Harmon* v. *Weston*, 215 Mass. 242, 246 (1913). *King* v. *Murray*, 286 Mass. at 496. Western Surety is therefore liable for $406,826.38, the total amount of Vaz's defalcations, as found by the trial judge, limited in time to December 1, 1997.

Even were we not to conclude that Vaz's debt to Anderson became as cash upon her appointment, as conservator, in performing the statutory condition, Vaz assumed "the management of all of the estate of [her] ward," and "all laws relative to the jurisdiction of the probate court over the estate of a person under guardianship as a mentally ill person, including the management, sale or mortgage of his property and the payment of his debts," became applicable to Anderson's property. G. L. c. 201, § 20, as amended through St. 1974, c. 845, § 11. This required, among other things, that Vaz "settle all accounts of [Anderson] and demand, sue for and receive all debts due to him." G. L. c. 201, § 37. See Dunphy, Probate Law and Practice § 49.2 (2d ed. 1997). Vaz clearly had an obligation, as conservator, to pursue and make good these claims. Vaz, as conservator, became liable to collect the debts from herself, and was required

---

[11]Some jurisdictions treat the liability of a surety in these circumstances the same as debt owing from third parties, and insolvency of the debtor, if occurring before and continuing through the administration, will absolve the surety of liability. See *American Sur. Co. of N.Y.* v. *Norton*, 238 S.W. 1111 (Tex. Comm'n App. 1922); *Glens Falls Indem. Co.* v. *Wall*, 163 Va. 635 (1934); *State of W. Va. for Use of Farmer* v. *Citizens' Trust & Guar. Co.*, 84 W. Va. 729 (1919).

to distribute the amounts to the executor of Anderson's estate after his death.

Vaz also was required, as conservator, to determine whether any alleged gifts made by Anderson were completed gifts, or whether they were the result of fraud or the like and, if so, to make claim for the property as belonging to Anderson's estate in her hands. See Dunphy, Probate Law and Practice, *supra* at § 26.7. The nature of this kind of proceeding, with a conservator charged with pressing a claim against herself for amounts inappropriately taken prior to her appointment, is, of course, the reason that the Massachusetts rule was adopted.

We are unable to determine from the record whether there might be additional amounts chargeable to the surety, as it is liable "for all damages caused by [the conservator's] neglect or maladministration," as set out in G. L. c. 205, § 31. In any event, none of the parties has raised the issue, and we consider any claim in this regard as waived.

The judgment dated June 9, 2003, disallowing the probate of two wills is affirmed. The judgment dated October 7, 2003, charging Western Surety is modified to increase the amount of the judgment to $406,862.38, plus interest from January 1, 1998, as determined by the Probate and Family Court. As so modified, that judgment is affirmed.

*So ordered.*