This is an appeal from the final disposition of two matters consolidated in the Probate and Family Court (Probate Court). In the first, the judge allowed by decree and order the petitioner's, Lynn M. DiPietro's (wife), request for the allowance of a first and final account as conservator of the respondent's, Budd F. Healy's (husband), estate. The second action resulted in a judgment, issued the same day, which modified the parties' 2012 judgment of divorce nisi (divorce judgment) by ordering, among other things, that the wife pay weekly alimony to the husband; the judgment did not modify the previously adjudicated marital property division. For the reasons set out below, we reverse the decree and order allowing the wife's first and final account, and affirm the judgment on the husband's complaint for modification.
Background. After twenty-six years of marriage, the parties divorced, by agreement, on October 17, 2012.[2] The parties' separation agreement survived the judgment and remained as an independent contract, except for those provisions related to the then minor children, alimony, and health insurance, which merged with the judgment. As a result of the property division, the wife retained the former marital home. However, the husband continued to live, rent free, in an in-law apartment above the garage located on her property. After the divorce, the wife continued to manage the husband's bills and finances as she had done throughout their marriage, and on October 24, 2012, the husband executed a new power of attorney appointing the wife as his attorney-in-fact.[3]
On August 5, 2013, the wife petitioned the court for an appointment of a conservator over the husband's estate due to growing concerns about his ability to care for himself following a diagnosis of alcohol-related dementia. According to the notice of petition, on August 8, 2013, Joseph Cotrona (the wife's boy friend) personally served the citation on the husband, and a copy of the citation was hand-delivered to the parties' adult daughter on August 9, 2013.[4] On September 3, 2013, the Probate Court appointed the wife, without objection, as the husband's conservator; the husband was not present at the hearing.
On March 28, 2014, the husband revoked the wife's power of attorney, and instead, designated his sister to serve in that capacity. In April, 2014, the husband petitioned to have the wife render an inventory as conservator of his estate; an order issued in July, 2014. On July 2, 2014, the husband petitioned the court to dismiss the conservatorship. On August 16, 2014, the wife transferred ownership of the husband's AXA Equitable Life Insurance policy (AXA policy) to an inter vivos revocable trust in the wife's name, which she claimed was for the benefit of the parties' daughter. On September 3, 2014, the wife filed her inventory showing a total of $ 565.05 in assets, consisting of only two bank accounts and "[m]iscellaneous tangible personal property." On September 9, 2014, the Probate Court judge terminated the wife's conservatorship at the husband's request. In October, 2014, the wife petitioned for the allowance of her first and final account of the conservatorship; the husband objected to the entire accounting.
Around this same time, the husband filed a complaint for modification of the divorce judgment seeking general term alimony and attorney's fees. His claimed change in circumstances to support the modification was based on his allegations of the wife's fraudulent appointment as conservator and her diversion of his bank and retirement accounts for her personal use, leaving him "penniless and without any assets." The two matters were consolidated for trial.
At trial, the judge found the wife's testimony credible. According to the wife, the husband's dementia diagnosis in the summer of 2013, and the continued deterioration of his condition in the fall of 2013, prompted her to petition for the conservatorship. In January, 2014, after the husband's termination from his position at Clark University, the wife rolled over $ 39,271 from the husband's existing employer defined contribution retirement plan into a TIAA-CREF retirement investment account for the husband's benefit. She later withdrew and divided these monies; she deposited $ 20,000 in the husband's existing AXA policy,[5] and deposited the remaining $ 19,271 in a TIAA-CREF annuity account which provided the husband with a monthly annuity payment of approximately $ 160.
During her testimony, the wife provided a general explanation regarding each of the four large cash withdrawals challenged by the husband. Specifically, she claimed that she handed the husband, while they were alone in her backyard, $ 11,250 in cash (in fifty and one hundred dollar bills) to purchase equipment for a garage he leased for his automobile restoration business. She also testified that she made three separate withdrawals from the AXA policy (in the amounts of $ 7,525, $ 1,010, and $ 1,125) which she used to pay certain unexplained attorney's fees.[6] The wife was ordered to repay only one of the challenged withdrawals, $ 1,125.
Ultimately, the judge found the wife's October 23, 2014, accounting to be "a fair and accurate representation of her management of [the husband]'s finances during the course of the conservatorship from September 9, 2013, until September 30, 2014." The judge further concluded that the wife "satisfactorily explain[ed] all of the large withdrawals and transfers between [the husband]'s accounts," and that she "acted in full compliance with her fiduciary obligations as conservator." However, the judge ordered the wife to transfer ownership of the AXA policy back to the husband from her inter vivos trust before she could be released from any liability arising out of the conservatorship. She was not required to compensate the husband for the unexplained decrease in the cash value of the AXA policy, valued at $ 18,516 in January, 2016.
As to the divorce judgment modification, the judge determined that there did exist a material change in circumstances since entry of the divorce judgment in 2012 (the husband's dementia diagnosis), and ordered the wife to pay general term alimony to the husband in the amount of $ 133 per week, which represented one-third of the difference between the parties' income. While the judge found the parties' prior financial misrepresentations to the court at the time of divorce "troubling," she determined that each party knew of the undisclosed property of the other at the time of execution of the separation agreement, which eliminated any alleged fraud. As a result, the judge declined to redistribute the parties' marital assets.[7] The husband filed a timely appeal.
Discussion. First and final account; inventory. The husband argues that the wife's account must be entirely stricken because of multiple breaches of her fiduciary duties as the conservator of his estate. He also claims that the inventory rendered was incomplete, as the wife failed to list his TIAA-CREF account, the AXA policy, and his Jeep -- assets the wife knew existed at the time of her conservatorship appointment. We agree, for a slightly different reason, that the decree and order must be vacated.
In a case requiring an accounting by a fiduciary, "[t]he burden of proof in such a proceeding is on the accountant, after [s]he has admitted the relation and the receipt of a certain sum, to prove that [s]he has disposed properly of the amount for which [s]he is accountable, and to show what that amount is." First Nat'l Bank of Boston v. Brink, 372 Mass. 257, 264 (1977). There also is no question that the wife bore the burden of proving her account through clear records and explanatory testimony relating to the money and property held by her as conservator. See Matter of the Estate of Moretti, 69 Mass. App. Ct. 642, 652-653 (2007), quoting Cleary v. Cleary, 427 Mass. 286, 293 (1998) ("The fiduciary can take precautions to ensure that proof exists that the transaction was fair and that [her] principal was fully informed, and [she] is in the best position after the transaction to explain and justify it"). See also G. L. c. 190B, § 5-417 (b ). However, the judge failed to clearly state the legal standard required to prove a conservator's account. In addition, at no time during the trial did the judge delineate who shouldered this burden of proof, and whether the wife offered sufficient evidence to meet that standard. Equally troublesome is an inference of shifting the burden to the husband where, in her findings, the judge determined that the husband "often appeared [during trial] confused and significantly impaired," that he "generally presented as child-like and immature," and that "[s]trikingly" he could not "recall his own birthday, or that of either of his two children." The husband's mental capacity was irrelevant to the wife's exclusive burden to prove her account.
In addition, because the beginning balance of the account is the balance taken from the previous inventory, the inventory must provide, "as far as information permits," an accurate record of the property in the ward's estate at the time of the conservatorship appointment. G. L. c. 190B, §§ 5-417 (a ) & 5-418 (c ) (1). See Wood v. Tuohy, 67 Mass. App. Ct. 335, 345 (2006) ("The statutory basis for a conservator's account is the inventory that is required to be filed under the statute; it is this inventory that provides the initial point of reference for the conservator's duties and accounting"). In this case, the judge failed to address in her findings that several items of the husband's property "that came to the hands of the [wife]" were omitted from the wife's inventory. Murray v. Massachusetts Bonding & Ins. Co., 283 Mass. 15, 20 (1933). As a result, it is unclear if the wife met her burden of presenting an account that is a complete and accurate record of the husband's estate while in her control. Id. For these reasons, the decree and order must be vacated.[8]
Because certain issues are likely to arise on remand, we address them here. First, as to the wife's claim that she gave the husband $ 11,250 in cash for his business, the judge will need to determine not only the credibility of the wife's testimony, but whether the husband was competent at that time to receive such a large sum of money. If he was not, giving him that money would have been a breach of the wife's fiduciary duty as conservator, appointed to manage the husband's estate for the purpose of protecting against the waste or dissipation of his assets. See G. L. c. 190B, §§ 5-401 (c ) (2) and 5-423 (c ) (19). See also Wood, 67 Mass. App. Ct. at 343.
Second, the husband challenges whether the wife may meet her burden of proof by oral testimony alone. As the conservator, the wife was required to "keep suitable records of the administration" of the husband's estate, and "exhibit the same on request of any interested person." G. L. c. 190B, § 5-417 (b ). The wife produced statements showing various withdrawals she made from the cash portion of the AXA policy. However, absent from this record are any receipts or invoices of payment associated with the challenged withdrawals as testified to by the wife. Although not necessarily fatal to proving the account, the judge must determine whether the wife's testimony alone regarding the specified withdrawals was a "suitable record" sufficient to support proof of the account.
Modification judgment. "In reviewing a modification judgment, we examine whether the factual and legal bases for the decision are in error, or whether the judge otherwise abused his discretion." Flor v. Flor, 92 Mass. App. Ct. 360, 363 (2017). The husband appeals from only the portion of the divorce judgment that relates to the division of marital assets. He briefly argues that because the wife failed to fully disclose on her financial statement (filed at the time of divorce) all of her assets, she breached the terms of the separation agreement, entitling him to a one-half share of her undisclosed annuity and individual retirement account (IRA). His argument fails.
The judge properly found a substantial change of circumstances had occurred permitting a modification. In addition, because the provisions of the separation agreement dividing the marital property survived the divorce judgment, that portion of the judgment was not subject to modification. See Bracci v. Chiccarelli, 53 Mass. App. Ct. 318, 322 (2001). Moreover, the husband failed to "allege[ ] that he was unaware of [the wife's] assets in negotiating the separation agreement." As a result, the parties' intention to omit certain assets from the marital estate was appropriately considered. For these reasons, the judge properly declined to modify that portion of the divorce judgment previously adjudicating a division of the marital property. See Carpenter v. Carpenter, 73 Mass. App. Ct. 732, 739-741 (2009).
Conclusion. The decree and order allowing the wife's petition for the allowance of a first and final account is vacated, and the matter is remanded for further proceedings consistent with this memorandum and order. The judgment on the husband's complaint for modification is affirmed.[9]
So ordered.
vacated in part and remanded; affirmed in part.

The parties' divorce nisi became absolute on January 15, 2013.

During the marriage, the husband had previously executed a power of attorney appointing the wife.

The parties' other child (a son) was not listed on the petition, nor was he served with the citation.

Prior to depositing $ 20,000 in the husband's AXA policy, as of September 21, 2013, there was a cash surrender value of $ 15,293.10.

The judge accepted the wife's oral testimony that was not supported by bills for attorney services rendered even though one would expect such bills to be readily obtainable.

The parties were, however, ordered to equally share the use and cost of a jointly-held timeshare property (an asset not included in the separation agreement), leaving open the possibility of a buy-out of interest by either party.

In addressing the husband's argument regarding the validity of the conservatorship, we conclude that the judge had jurisdiction to appoint the wife as conservator. Evidence supported a finding of proper service on the husband of the appointment proceedings. See Adoption of Larry, 434 Mass. 456, 462 (2001) ("We defer to the judge's assessment of the weight of the evidence and credibility of the witnesses"). The husband failed to timely challenge the appointment after receiving notice, resulting in his inability to do so now. See Smith v. Sex Offender Registry Bd., 65 Mass. App. Ct. 803, 810 (2006) (issue raised for first time on appeal is waived). In addition, we agree that the husband lacked standing to challenge the lack of service of the citation on the son. See Barbara F. v. Bristol Div. of Juvenile Court Dep't, 432 Mass. 1024, 1024-1025 (2000) (only "persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duty [of adjudicating disputes or particular issues]").

The wife's request for appellate attorney's fees is denied.