NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-589

IN THE MATTER OF FRANCIS G. GLEASON, SR.

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 23.0</u>

The stepdaughter of Francis G. Gleason, Sr., who was his health care proxy, signed a contingency fee agreement with an attorney to pursue tort claims on behalf of Gleason. She lacked authorization to do so. When the tort claims were on the verge of a favorable settlement, a Probate and Family Court judge issued an order directing a special conservator for Gleason to sign the fee agreement nunc pro tunc. Gleason's biological children, including his son, Francis G. Gleason, Jr., objected to this order, and that son (objector) now appeals its issuance, among other decrees.[1] Concluding that the contingency fee agreement was not an illegal contract and could be ratified by an authorized special conservator, we affirm.

---

[1] Contrary to the assertion of counsel for the stepdaughter and Gleason's court-appointed counsel, the objector filed a timely notice of appeal of both this order, which was entered on September 8, 2020, and of the final decree, which was entered on March 9, 2022. Accordingly, we need not determine whether the September 8, 2020, order was itself an appealable, final order.

1.  Standard of review.  "[I]n the appointment of a guardian, '[a] probate judge has substantial discretion.'"  Wood v. Tuohy, 67 Mass. App. Ct. 335, 345 (2006), quoting New England Merchants Nat'l Bank v. Spillane, 14 Mass. App. Ct. 685, 693 (1982).  See also G. L. c. 190B, § 5-425 (judge may confer or limit conservator's powers).  "The power is not without limits, and the court must exercise its power with a view to the best interests of the [protected person]."  Wood, supra, quoting New England Merchants Nat'l Bank, supra.  We review conservatorship decisions for an abuse of discretion.  See Gershaw v. Gershfield, 52 Mass. App. Ct. 81, 96 (2001) (decision on appointment of guardian ad litem reviewed for abuse of discretion).  "An abuse of discretion occurs only where the judge makes a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives."  Matter of the Estate of Urban, 102 Mass. App. Ct. 284, 296 (2023), quoting Barbetti v. Stempniewicz, 490 Mass. 98, 105 (2022).

2.  Contract.  "[W]here the parties have entered into an illegal contract, courts will generally decline to enforce the contract."  Merrimack College v. KPMG LLP, 480 Mass. 614, 622 (2018).  An unauthorized contract, however, is not the same thing as an illegal contract.  See Frishman v. Maginn, 75 Mass. App. Ct. 103, 117 (2009) (contract for sale of securities

2

forbidden by Federal law and violative of public policy was "illegal contract"). Accord Baskin v. Pass, 302 Mass. 338, 342 (1939), abrogated by Saladini v. Righellis, 426 Mass. 231, 231 (1997) (contract to sell cause of action, then forbidden, illegal); Claflin v. United States Credit Sys. Co., 165 Mass. 501, 503 (1896) (contract to sell insurance by corporation forbidden by law to sell insurance was illegal). If an otherwise valid contract is signed on behalf of a principal by an unauthorized person, the contract simply "does not bind the principal." Johnson v. Kindred Healthcare, Inc., 466 Mass. 779, 781 (2014) ("health care agent's decision to enter into an arbitration agreement" not enforceable because it "is not a health care decision"). Instead, such a contract must be ratified for it to be binding on the principal. See Licata v. GGNSC Malden Dexter LLC, 466 Mass. 793, 802 (2014), quoting Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 18, cert. denied, 522 U.S. 1015 (1997) ("Where an agent lacks actual authority to agree on behalf of his principal, the principal may still be bound if the principal acquiesces in the agent's action, or fails promptly to disavow the unauthorized conduct after disclosure of material facts").

Here, in his appellant brief, the objector challenges only the legality of the fee agreement. The agreement itself was legal because a contingency fee agreement for a personal injury

3

case is permitted by Massachusetts law.  See Matter of the Discipline of an Attorney, 451 Mass. 131, 138 (2008); Mass. R. Prof. C. 1.5 (c), (d), as amended, 480 Mass. 1315 (2018) (contingency fee agreements permissible except in domestic relations or criminal cases).[2]  Although the agreement was initially signed on behalf of the father by his health care proxy, who does not appear to have been authorized to sign such an agreement, the mere fact that it was unauthorized did not prohibit an authorized person from ratifying the agreement later.  Accordingly, the judge acted within her discretion in

---

[2] The objector asserts in passing that the agreement was illegal because it "contained an excessive 33% when if one takes the time to untwist the 'triple negative' built into it, one sees that Atty. Gray did not have an obligation to go to trial and yet would be owed 33% even if he did not and a successor did!" "This general assertion, without citation to authority, fails to rise to the level of appellate argument." Maroney v. Planning Bd. of Haverhill, 97 Mass. App. Ct. 678, 683 n.8 (2020).  In any event, "[c]ourts will not go out of their way to discover an illegality in a contract," Frishman, 75 Mass. App. Ct. at 116, and here the agreement limits the attorney's compensation to "the fair value of the services rendered to the Client to the time of discharge, which is billed at a reasonable hourly rate," in the event of replacement by successor counsel.

4

directing the special conservator to sign the agreement, thus ratifying it and making it effective.[3]

Decree affirmed.

By the Court (Neyman, Henry & Ditkoff, JJ.[4]),

Assistant Clerk

Entered:   January 9, 2024.

---

[3] We do not consider the arguments raised for the first time in the reply brief.  See Allen v. Allen, 86 Mass. App. Ct. 295, 302 n.11 (2014), quoting Pasquale v. Casale, 72 Mass. App. Ct. 729, 738 (2008) ("Any issue raised for the first time in an appellant's reply brief comes too late, and we do not consider it").  Similarly, we do not consider the argument concerning a purported discrepancy in the conservator's report raised only in a footnote and without citation to authority or the unexplained requests for relief contained in a single sentence in the conclusion of the objector's initial brief.  See Mole v. University of Mass., 442 Mass. 582, 603 n.18 (2004).

[4] The panelists are listed in order of seniority.